UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GERALD LESSERT, Special Administrator of the Estate of RICHARD CLAYMORE LESSERT, Deceased,<br><br>                Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Corporation,<br><br>                Defendant. | 5:17-CV-05030-JLV<br><br>REPORT AND RECOMMENDATION ON MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 47); MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 108); MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 115); AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 129) |

## **INTRODUCTION**

This is an action brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.* Plaintiff filed a motion for partial summary judgment requesting the court to grant summary judgment in its favor regarding a violation of 49 C.F.R. § 214.315(a)(1) and (2). (Doc. 108). In support of his motion, Plaintiff filed a statement of undisputed material facts. (Doc. 110). Defendant BNSF Railway Co. resists Plaintiff's motion and filed a cross motion for partial summary judgment regarding violations of 49 C.F.R. § 214.315. (Docs. 129, 130). Defendant also filed a statement of undisputed material facts in support of its motion. (Doc. 131). Both parties filed responses to the opposing statements of undisputed material fact. (Docs. 132, 151). Both parties also filed reply briefs. (Docs. 150, 156).

1

## **BACKGROUND**

The facts, as relevant to the pending motions,[1] are as follows: Richard Lessert[2] was an employee of Defendant BNSF Railway Company ("BNSF") when he was struck and killed by one of BNSF's trains while cleaning snow and ice out of a switch. A switch is a device that is used to redirect trains from a main railroad track onto a wye, and vice versa. A "wye" is not a mainline track, but instead, is used to park railcars on it.

On the morning of January 17, 2017, BNSF was preparing to test communication equipment on special train cars that carry automobiles called "auto racks." As part of that operation, a train was to be moved from Main Railroad Track 1 onto the Deadwood Wye,[3] connect to the auto rack sitting on the Deadwood Wye, and be moved back onto Main 1 until testing was done. (Doc. 117 at ¶3).

It is undisputed that Mr. Lessert was the foreman of his Maintenance of Way crew which included Stanley Mitchell and Doug Schmitz.[4] (Doc. 131 at ¶

---

[1] On a motion for summary judgment, the nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). Because the court is considering Plaintiff's claim for partial summary judgment and Defendant's cross motion for partial summary judgment regarding a violation on the same regulation, the court states the undisputed facts and notes the disputed facts without drawing reasonable inferences in favor or any party.
[2] All references herein to "Mr. Lessert" are referring to Richard Lessert, the decedent, not to be confused with Gerald Lessert, the father and special administrator of the estate of Richard Lessert.
[3] The parties use the terms "wye" and "y" interchangeably. The court will refer to it as "wye."
[4] Doug Schmitz was also killed in this incident.

20). On the date in question, Mr. Lessert, Mr. Schmitz, and Mr. Mitchell were all considered roadway workers within the meaning of 49 C.F.R. § 214.315. (Doc. 110 at ¶¶ 9-11). This Maintenance of Way crew is also referred to as a work group.

The parties dispute whether Mr. Lessert was the "roadway worker in charge." BNSF uses the terms "roadway worker in charge" and "employee in charge" interchangeably.[5] BNSF asserts that Mr. Lessert was the roadway worker in charge based on the following testimony from Stanley Mitchell:

> Q: Okay. So Lessert, as the foreman, was technically the employee in charge of this group, is that correct?
>
> A: Correct.

(Doc. 49 at ¶ 21; Doc. 117 at ¶ 5, citing Mitchell depo., at p. 33).

Plaintiff disputes that Mr. Lessert was the roadway worker in charge. First, Plaintiff asserts that defense counsel's qualifying question to a member of the work group as to whether Mr. Lessert's role as foreman also renders Mr. Lessert as the employee in charge, fails to establish Mr. Lessert's qualifications as the roadway worker in charge. Additionally, Plaintiff argues that the proper terms contained in the federal regulations and Defendant's rules determine

---

[5] BNSF's Maintenance of Way Operating Rules defines an employee in charge as: "A rules qualified MW employee who is assigned the duty of being responsible for the protection and direction of him/herself and his/her co-workers in any engineering work activity." The Federal Railroad Administration ("FRA") defines roadway worker in charge as: ". . . a roadway worker who is qualified under § 214.353 to establish on-track safety for roadway work groups, and lone workers qualified under § 214.347 to establish on track safety for themselves." 49 C.F.R. § 214.7.

each person's status. (Doc. 151 at p. 18). In support of this argument, Plaintiff cites to a chart he created and filed at Doc. 139-1 summarizing his view of the evidence as it fits the definitions from the federal regulations and BNSF's Maintenance of Way Operating Rules. While Plaintiff concedes that Mr. Lessert, as the foreman of his work group, was the "employee in charge," Plaintiff argues that a "roadway worker in charge" was never designated. (Doc. 139-1 at p. 4). In support of this position, Plaintiff cites the deposition of Dennis Stirmel[6] wherein he stated that he did not assign or designate anyone to be the roadway worker in charge. Id. (citing Stirmel depo. at p. 52). Plaintiff argues that Doug Schmitz was the roadway worker in charge because he served as the lookout.[7] Plaintiff cites his liability expert, Joe Lydick, who testified that Mr. Schmitz was the roadway worker in charge because he was providing the on-track safety. (Doc. 139-1 citing Lydick depo. at p. 26).

The parties also dispute how it came to be that Mr. Lessert's work crew performed their tasks. Plaintiff asserts the BNSF assigned Mr. Lessert to clean snow and ice out of switches. (Doc. 110 at ¶14). BNSF asserts that BNSF did not assign Mr. Lessert to clean snow and ice out of switches. (Doc. 132 at p.

---

[6] Dennis Stirmel (track inspector) was the foreman in charge, tasked with lining out duties of the day. (Doc. 153-1 at p. 3-4). In terms of the chain of command, Mr. Lessert, Mr. Schmitz and Mr. Mitchell were all below Mr. Stirmel on the organizational flow chart.

[7] BNSF disputes that Doug Schmitz was the lookout. BNSF asserts that although Mr. Schmitz filled out the on-track safety form, Mr. Lessert (as the foreman) did not assign lookout duties to any one crew member. (Doc. 132 at p. 1 citing Mitchell depo. at pp. 34-36). Plaintiff counters, citing Mr. Mitchell's testimony stating that Mr. Schmitz was the lookout and the NTSB Report finding that Mr. Schmitz was the lookout.

2). In support of BNSF's assertion, Defendant cites a portion of Mr. Mitchell's testimony wherein he stated his shift began by clearing snow on the Deadwood Wye track and in the parking lot of the nearby depot; that Mr. Mitchell then met up with Mr. Lessert and Mr. Schmitz near the depot; that they got in a truck and traveled together to the switch; and that Mr. Mitchell had not heard from anybody other than Mr. Lessert and Mr. Schmitz that the switch needed to be cleaned. Id. (citing Doc. 50-6, Mitchell depo. at pp 7-9).

Plaintiff responds that this factual representation is disingenuous because BNSF purposefully avoided asking Mr. Mitchell about the assignment received by Mr. Stirmel. The court agrees. Mr. Mitchell's testimony does not establish that the work wasn't assigned; it just summarizes Mr. Mitchell's recounting of the tasks that were completed. In no way, does Mr. Mitchell's testimony establish or refute that cleaning snow and ice out of switches wasn't assigned by Mr. Stirmel. At paragraphs 14-43 of Plaintiff's Statement of Material Facts, Plaintiff sets forth that: 1) BNSF assigned Mr. Lessert, Mr. Schmitz and Mr. Mitchell the task of cleaning snow and ice out of switches; and 2) failed to provide them with the track safety job briefing. BNSF responds by citing Mr. Mitchell's testimony regarding the sequence of tasks he performed that day and arguing that "Mr. Lessert, as the foreman and roadway worker in charge (RWIC), was entirely responsible for his crew and had a duty and was required to provide an on-track job safety briefing." (Doc. 132 at pp. 2-15). Mr. Mitchell's testimony does not refute the fact that BNSF (through Mr. Stirmel) assigned the task of fouling track. Furthermore, the argument that

Mr. Lessert, not BNSF, was responsible for the safety briefing is a legal argument; not citation to the record opposing the Plaintiff's statement of uncontested material fact. This response fails to comply with D.S.D. Civ. LR 56.1(B). Therefore, the court concludes that BNSF assigned the work group the duties of fouling track and no safety briefing was conducted by Mr. Stirmel.

Mr. Stirmel testified that at 6:30 a.m. on January 17, 2017, he began his day with a conference call with the chief dispatcher to go through everything and make sure there were no issues or concerns with the work that they were trying to accomplish for the day. (Doc. 153-1 at p. 3). Around 7:30 a.m., Mr. Stirmel had a job briefing telephone call that involved Mr. Lessert. Id. at p. 6. Mr. Stirmel testified as follows:

> Q:  Okay. So this phone call that you had with Mr. Lessert, that was the phone call that took place somewhere around 7:30 that morning and also on the line were Mr. Huber, Mr. Schmitz, and Mr. Mitchell?
>
> A:  Correct.
>
> Q:  Was anyone else on the line at that time?
>
> A:  Not to my knowledge.
>
> Q:  And you gave us a bit of the overview of the purpose. What was the specific purpose of that call that morning?
>
> A:  It was just to make sure that they were aware that this train was going to be pulling some cars out of the Deadwood wye, and to have them contact – get in touch with, communicate

6

> with the trainmaster to find out just exactly what kind of help from maintenance of way that they were going to need.
>
> Q:   Okay. Mr. Huber testified today that an assignment that the maintenance of way crew was given – and again, when I'm referring to that term, I'm talking about Mr. Lessert, Mr. Schmitz, and Mr. Mitchell -- was to clean snow and ice out of the wye switch; is that correct?
>
> A:   Yes.

Id. at pp. 6-7. See also id. at pp. 29-30; 35-36 (testifying Q: Okay. Is it correct that at the time you assigned the maintenance of way crew to go clean snow and ice out of the wye switches, that you knew they were going to have to foul the track? A: Yes"). Mr. Huber's testimony echoes Mr. Stirmel's testimony. (Doc. 153-9, pp. 4-6).

At the 7:30 a.m. telephone conference assigning the crew the task of fouling track, no safety briefing was held. Contrary to BNSF's factually unsupported opposition discussed *supra*, the relevant testimony is as follows:

> Q:   Okay. Now, at the time –
>
> A:   Or the main line switch.
>
> Q:   -- that you made – that you assigned this crew to clean out the wye switch, did you at the same time discuss anything about the means by which the maintenance of way crew would have on-track protection?
>
> A:   No.

> Q: Did you talk anything, discuss anything about on-track safety procedures when you made this assignment?
>
> A: No.

(Doc. 111-9 at p. 4). <u>See</u> also (Doc. 111-8 at pp. 2-3). The record is clear and uncontradicted that no safety briefing occurred at the time BNSF assigned Lessert's crew the duty to foul track.

Plaintiff and BNSF generally agree that Randy Dixon, a brakeman on the crew tasked with operating the auto rack train, testified that the switch from the Deadwood Wye to Main 1 was "frozen down" and needed to be cleared from debris before the test train could cross over onto the Deadwood Wye. Mr. Dixon and another crew member spent 30-40 minutes attempting to clear the switch. (Doc. 117 at ¶4; Doc. 138). Later that morning, Mr. Lessert, Mr. Schmitz and Mr. Mitchell went out to Main 1 to clean the same switch. (Doc. 117 at ¶5, Doc. 138). According to Mr. Mitchell, the crew decided to use a form of on-track protection, referred to as "lookout protection" while they occupied the tracks, and they determined that doing so was an adequate and safe form of protection under the circumstances. (Doc. 117 at ¶ 6; Doc. 138; Doc. 110 at ¶ 1).

The parties dispute whether Mr. Schmitz was the lookout and the steps implemented to establish lookout protection. Plaintiff asserts that at the time of the incident, Mr. Schmitz was the lookout. In support of this, Plaintiff points to the deposition of the only surviving member of the crew, Mr. Mitchell. The court concludes that Mr. Mitchell's testimony very clearly establishes that Mr.

8

Schmitz was the lookout. (Doc. 139-7 at pp. 6-7; 10-11).[8] What is unclear, is how Mr. Schmitz came to be the lookout. Mr. Mitchell testified that the only discussion regarding on-track safety occurred while the three men were in the pickup truck getting ready to begin the task of cleaning out the switch was when Schmitz stated, "I'll fill out the form." Id. Mr. Mitchell testified that he did not hear Mr. Lessert assign or designate Mr. Schmitz to be the lookout. Id. Based on this testimony, BNSF argues that Mr. Lessert did not assign lookout duties to any one crew member. (Doc. 132 at pp. 2-3). Plaintiff counters this assertion by arguing that Mr. Mitchell could not have known what Mr. Lessert and Mr. Schmitz talked about. (Mitchell depo., "Q: Do you know what discussion Mr. Lessert and Mr. Schmitz may have had about the work that day at the time you were not with them? A: No." (Doc. 139-7 at p. 10)). Plaintiff argues that it is entirely reasonable to infer that Mr. Lessert assigned Mr. Schmitz to be the lookout or that Mr. Schmitz volunteered, and Mr. Lessert didn't object. (Doc. 152 at pp. 3-4).[9]

---

[8] BNSF states in its brief, "Mitchell's testimony is uncontradicted on these points, and to suggest any one person was the lookout is unsupported by the evidence." (Doc. 130 at p. 8). The court finds this statement to be a misrepresentation of the record. Mr. Mitchell's testimony clearly establishes that Mr. Schmitz was the lookout.

[9] The parties zealously dispute whether Mr. Lessert or Mr. Schmitz was the roadway worker in charge, which in turn makes them responsible to conduct the some of the duties of § 214.315. Plaintiff asserts by virtue of the fact that Mr. Schmitz was providing on-track safety to all members of the group at the time of the incident, Mr. Schmitz was the roadway worker in charge. (Doc. 139-1, at p. 4 fn 26, citing Lydick depo at pp. 22-28 and the NTSB Report). Defendant asserts that by virtue of being the foreman of the work crew, Mr. Lessert, was the roadway worker in charge and therefore entirely responsible for his group and to provide the on-track safety briefing. (Doc. 132 at pp. 1-2 citing Bainter depo. at pp. 208)).

9

It is undisputed that Mr. Schmitz filled out the on-track safety form. (Doc. 49 at ¶ 29). Mr. Schmitz failed to see the train that struck Mr. Lessert until it was too late for Mr. Schmitz to warn Mr. Lessert, or for he and Mr. Lessert to get out of the way. (Doc. 110 at ¶ 3-4; Doc. 132). The train struck and killed both Mr. Schmitz and Mr. Lessert.

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment will not be granted if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence,

10

showing that a genuine issue of material fact exists. Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e) (stating that each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48 (emphasis in original).

## DISCUSSION

Enacted in 1908, the Federal Employers Liability Act "provides railroad employees with a federal cause of action for injuries 'resulting in whole or in part from the negligence' of the railroad." Cowden v. BNSF Ry. Co., 690 F.3d 884, 889-90 (8th Cir. 2012) (quoting 45 U.S.C. § 51). "'The FELA imposes upon employers a continuous duty to provide a reasonably safe place to work.'" Cowden , 690 F.3d at 889-90 (quoting Francisco v. Burlington N. R.R. Co., 204 F.3d 787, 789 (8th Cir. 2000)). "It is well settled that the FELA requires a finding of negligence per se when there has been a violation of a safety statute

11

[or regulation] specifically aimed at the railroad industry." Correll v. Consolidated Rail Corp., 266 F.Supp.2d 711, 714 (N.D. Ohio, 2003) (citing Ries v. National Railroad Passenger Corp., 960 F.2d 1156, 1159 (3d Cir. 1992).

### A. Whether BNSF violated 49 C.F.R. § 214.315

Both parties move the court for summary judgment regarding whether or not BNSF violated 49 C.F.R. § 214.315. The entirety of 49 C.F.R. § 214.315 reads as follows:

> **(a) When an employer assigns a duty to a roadway worker that calls for that employee to foul a track, the employer shall provide the employee with an on-track safety job briefing that, at a minimum, includes the following:**
>
> **(1) Information on the means by which on-track safety is to be provided for each track identified to be fouled;**
>
> **(2) Instruction on each on-track safety procedure to be followed;**
>
> (3) Information about any adjacent tracks, on-track safety for such tracks, if required by this subpart or deemed necessary by the roadway worker in charge, and identification of any roadway maintenance machines that will foul such tracks;
>
> (4) A discussion of the nature of the work to be performed and the characteristics of the work location to ensure compliance with this subpart;
>
> (5) Information on the accessibility of the roadway worker in charge and alternative procedures in the event the roadway worker in charge is no longer accessible to the members of the roadway work group.
>
> (b) A job briefing for on-track safety shall be deemed complete only after the roadway worker(s) has acknowledged understanding of the on-track safety procedures and instructions presented.
>
> (c) Every roadway work group whose duties require fouling a track shall have one roadway worker in charge designated by the employer to provide on-track safety for all members of the group.

12

> The designated person shall be qualified under the rules of the railroad that conducts train operations on those tracks to provide the protection necessary for on-track safety of each individual in the group. The responsible person may be designated generally, or specifically for a particular work situation.
>
> (d) **Before any member of a roadway work group fouls a track, the roadway worker in charge** designated under paragraph (c) of this section **shall inform each roadway worker of the on-track safety procedures to be used and followed during the performance of the work at that time and location.** Each roadway worker shall again be so informed at any time the on-track safety procedures change during the work period. Such information shall be given to all roadway workers affected before the change is effective, except in cases of emergency. Any roadway workers who, because of an emergency, cannot be notified in advance shall be immediately warned to leave the fouling space and shall not return to the fouling space until on-track safety is re-established.
>
> (e) Each lone worker shall communicate at the beginning of each duty period with a supervisor or another designated employee to receive an on-track safety job briefing and to advise of his or her planned itinerary and the procedures that he or she intends to use for on-track safety. When communication channels are disabled, the job briefing shall be conducted as soon as possible after the beginning of the work period when communications are restored.

Id. (emphasis added). Plaintiff argues that Mr. Lessert, Mr. Schmitz, and Mr. Mitchell were roadway workers within the meaning of 49 C.F.R § 214.315(a); BNSF (the employer) assigned them to a duty that required them to foul a track; and that BNSF failed to provide them with an on-track safety briefing as required by the regulation. Plaintiff further asserts that there is no dispute in this case that this on-track safety briefing was not provided to Mr. Lessert, Mr. Schmitz, and Mr. Mitchell when they were assigned the work that required

13

them to foul a track. (Doc. 109 at pp. 10-11). In support of this position, Plaintiff cites paragraphs 26-43 of its Statement of Material Facts.

BNSF opposes Plaintiff's position[10] and requests that the court grant its motion for summary judgment because it believes that a proper reading of 49 C.F.R. § 214.315 requires that Mr. Lessert, as the employee-in-charge, or roadway worker in charge, was entirely responsible for his group and Mr. Lessert was required to provide the on-track safety briefing within the meaning of the federal regulations. (Doc. 129 at p. 8). BNSF argues that Plaintiff's interpretation of the regulation would lead to an absurd result and urges the court to adopt its interpretation of the statute, which it believes is consistent with the commentary to the FRA and BNSF's Maintenance of Way Operating Rules.

The court first turns to the plain language of the regulation. The regulation starts out by requiring "(a) **When an employer assigns a duty to a roadway worker** that calls for that employee to foul a track, **the employer shall provide the employee** with an on-track safety job briefing that, at a minimum includes the following: . . ." 49 C.F.R. § 214.315(a). Here, the employer, BNSF, through Mr. Stirmel assigned Mr. Lessert, Mr. Schmitz, and

---

[10] BNSF also asks the court to reject Plaintiff's motion for partial summary judgment because Plaintiff only generally plead regulatory violations of 49 C.F.R. Part 214 and failed to produce documents in response to BNSF's Requests for Production of Documents and Interrogatories. This court finds that Plaintiff sufficiently plead the cause of action and discovery conducted throughout the case has sufficiently put BNSF on notice of Plaintiff's claims. This matter it is properly before this court on the motions for partial summary judgment.

14

Mr. Mitchell the duty to foul track during their 7:30 a.m. conference call.  Per the plain language of the statute, this briefing is to occur at the time when the duty is assigned.  The facts are undisputed that no job safety briefing regarding what on-track safety methods were to be employed occurred during the 7:30 a.m. conference call.  The court concludes that this is a violation of 49 C.F.R. § 214.315(a).

Further, reading the rest of the statute as a whole discredits BNSF's interpretation and support's Plaintiff's interpretation of the statute.  Subsection (a) requires the employer to conduct the job safety briefing at the time the task is assigned; Subsection (d) requires the roadway worker in charge to inform the roadway work crew "of the on-track safety procedures to be used and followed during the performance of the work *at that time and location.*"  C.F.R. § 214.315(d) (emphasis added).  The regulation sets forth two procedures for job safety briefing: the first safety briefing is conducted by the employer at the time the work is assigned, and the second is to be conducted by the roadway worker in charge at the time and location of where the track is to be fouled.  The court need not consider the disputed fact of whether Mr. Schmitz or Mr. Lessert was the roadway worker in charge[11] because there previously had been a violation of the regulation by BNSF for failing to conduct the job safety briefing at the 7:30 a.m. conference call.

---

[11] The court finds that BNSF's continual referral to Mr. Lessert as the roadway worker in charge is a distortion of the record.  Mr. Mitchell testified that Mr. Lessert was the foreman or "technically" the employee in charge; he did not testify that he was the roadway worker in charge.

15

BNSF's position that Mr. Lessert was entirely responsible for the safety of the crew and he was responsible for providing the safety briefing required by § 214.315(a) is not supported by the plain language of the regulation.  To accept BNSF's reading of the regulation, the court would have to conclude that Lessert was the employer who assigned himself the duty to foul track and then was required to conduct the safety briefing.  The court rejects this strained reading of the regulation.  Likewise, the court rejects BNSF's argument that the term "employer" under these regulations is unspecific because "employer" is only defined as a "railroad" which is not an individual but an entity who is not capable of conducting the required job safety briefings of § 214.315.  (Doc. 130 at p. 11).  Mr. Stirmel, as an employee of the railroad and above the chain of command from Mr. Lessert, Mr. Schmitz and Mr. Mitchell, assigned them to foul a track, and therefore, is the representative of the employer, BNSF.

The court concludes that BNSF violated 49 C.F.R. § 214.315 by failing to conduct the safety job briefing when Mr. Stirmel assigned the work group the task of fouling a track at the 7:30 a.m. conference call and recommends that partial summary judgment should be granted in favor of Plaintiff and against BNSF.

### B. Causation

Plaintiff is unclear in the relief he is seeking.  In the memorandum in support of his motion, Plaintiff states, "In the underlying motion, Plaintiff does not seek summary judgment on the issue of causation . . . Because causation is not a subject of the motion that is the subject of this memorandum, it is not

16

pertinent to set out all the ways in which Defendant's violation of 49 C.F.R. § 214.315 caused Mr. Lessert's death." (Doc. 109 at p. 5-6). Yet, he goes on to argue that "In these ways [failure to conduct a proper § 214.315 (a) safety meeting] and many others, Defendant's violation of 49 C.F.R. § 214.315 was a cause, 'in whole or in part,' of Mr. Lessert's death within the meaning of 45 U.S.C. § 51." Id.

Similarly, in response to BNSF's argument that Mr. Lessert's death was caused or contributed by his failure to use other means of track protection such as obtaining track authority, Plaintiff argues that any such failure would not have occurred if BNSF would have conducted the § 214.315 safety briefing and would have required another form of on-track protection to be used. He argues, "Because lookout protection would not have been used, there would have been no failure of a lookout to reasonably and adequately do his job to result in the work gang being struck by the train." Clearly, this is a causation argument.

This court believes the record is sufficiently developed for the court to resolve the issue of causation and recommends to the district court to give notice under Federal Rule of Civil Procedure 56(f) of its intent to *sua sponte* determine the issue of causation in its review of partial summary judgment to allow for briefing of the issue of causation at the same time it addresses any objections to this Report and Recommendation.

17

## CONCLUSION

Based on the foregoing discussion, this Court respectfully recommends that Plaintiff's motion for partial summary judgment (Doc. 108) be granted and that Defendant's cross motion for partial summary judgment (Doc. 129) be denied.

It is further recommended that because the court concludes that BNSF is negligent per se, its motions for summary judgment (Doc. 47 and Doc. 115) are without merit and recommends that they be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 21st day of May, 2020.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge