UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| GERALD LESSERT, SPECIAL ADMINISTRATOR OF THE ESTATE OF RICHARD CLAYMORE LESSERT, DECEASED; AND RICHARD CLAYMORE LESSERT,<br><br>        Plaintiffs,<br><br>  vs.<br><br>BNSF RAILWAY COMPANY, A CORPORATION;<br><br>        Defendant. | 5:17-CV-05030-JLV<br><br>REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DAMAGES (DOC. 104) |

## **INTRODUCTION**

This is a federal question action before the court on Plaintiff's complaint alleging damages under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.* for the injury and death of Richard Lessert who was struck and killed by a train while working as an employee for Defendant.

Defendant has moved for partial summary judgment requesting a finding that Plaintiff cannot recover alleged damages in so far as they seek to recover for: (1) Mr. Lessert's[1] conscious pain and suffering; and (2) losses sustained by Mr. Lessert's unadopted stepdaughter. (Docs. 104, 134-36, 147, 149). Plaintiff opposes the motion in its entirety. (Docs. 140-42).

---

[1] All references herein to "Mr. Lessert" are referring to Richard Lessert, the decedent, not to be confused with Gerald Lessert, the father and special administrator of the estate of Richard Lessert.

## **MATERIAL FACTS**

The facts, viewed in the light most favorable to Plaintiff, the nonmoving party are as follows:

On the morning of January 17, 2017, BNSF was continuing preparations for test communication equipment on special train cars that carry automobiles called "auto racks." (Doc. 141 at p. 2). As part of this test operation, a train was to be moved from a mainline track to a dead-end side track using a device called a "switch." Id. When a switch is obstructed with debris like snow and ice, it will not function properly. Id. at p. 3. On the morning of the incident, Mr. Lessert, along with two other BNSF maintenance of way workers, went to clear snow and ice from a switch that was going to be used by the test train crew. Id. After the crew of three arrived at the switch and began working, a BNSF train came through and struck Mr. Lessert, fatally injuring him. Id.

William Roberts, the conductor of the train that struck Mr. Lessert, was the first person to reach Mr. Lessert following the collision. Mr. Roberts testified that he saw steam and heard a gurgling noise coming from Mr. Lessert, before hearing nothing. Id. at p. 6. Dr. Habbe, the doctor who performed the autopsy on Mr. Lessert testified that among other traumatic injuries, Mr. Lessert suffered two severe skull fractures – one at the base of his skull and one at the right side of the forehead, along with hemorrhaging in his brain. Id. at p. 7. It was determined that Mr. Lessert's spinal cord was completely severed at the thoracic spine. Id. Mr. Lessert is survived by his wife, two biological children, and an unadopted step-daughter. Id. at p. 8.

Plaintiff seeks damages for Mr. Lessert's injuries prior to his death for the benefit of his statutory beneficiaries under FELA. Id. Additionally, under FELA, Plaintiff seeks to recover for losses incurred by Mr. Lessert's unadopted step-daughter. Id. at p. 9.

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

The court must view the facts, and inferences from those facts, in the light most favorable to the nonmoving party. See Matsushita Elec. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); Helton v. Southland Racing Corp., 600 F.3d 954, 957 (8th Cir. 2010) (per curiam). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Allison v. Flexway Trucking, Inc., 28 F.3d 64, 66 (8th Cir. 1994).

The burden is placed on the moving party to establish both the absence of any genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Once the movant has met its burden, the nonmoving party may not simply rest on the allegations in the pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Anderson, 477 U.S. at

256; FED. R. CIV. P. 56(e) (stating that each party must properly support its own assertions of fact and properly address the opposing party's assertions of fact, as required by Rule 56(c)).

The underlying substantive law identifies which facts are "material" for purposes of a motion for summary judgment. Anderson, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2725, at 93–95 (3d ed. 1983)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247–48.

## DISCUSSION

FELA provides compensation to railroad employees injured on the job, or to their statutory beneficiaries in the event that the injury results in death of such employee. 45 U.S.C. § 51. Mr. Lessert's father, as the special administrator of his son's estate, filed the present lawsuit to seek damages pursuant to FELA. Relevant to the pending Motion for Partial Summary Judgment, Plaintiff alleges damages arising from: (1) Mr. Lessert's conscious pain and suffering; and (2) losses suffered by Mr. Lessert's unadopted step-daughter.

I. **Damages Arising from Alleged Conscious Pain and Suffering**

To prevail on damages arising from a theory of conscious pain and suffering, Plaintiff must demonstrate the decedent was conscious and endured pain and suffering for an appreciable length of time. See Great N. R. Co. v. Capital Tr. Co., 242 U.S. 144, 147 (1916) (holding that a railway employee, though unconscious, having lived for perhaps 10 minutes after a fatal injury, affords no basis for damages in addition to beneficiary's pecuniary loss under Act April 5, 1910, § 1, amending Employers' Liability Act, § 6, 45 U.S.C.A. § 56, as to survival of right of action thereby given to person injured). Although other circuits have contrasting views, both the Supreme Court of the United States and the Eighth Circuit Court of Appeals have not defined what constitutes an appreciable length of time.[2]

The Supreme Court, however, has held in a case decided shortly after FELA was enacted, that the passage of thirty minutes between injury and death, and conflicting reports as to whether the individual was conscious or not, was "borderline" for damages stemming from conscious pain and suffering. The facts of said case were as follows:

> A car passed partly over [a man's] body, breaking some of the bones, lacerating the flesh and opening the abdomen, and then held him fast under the wheels with a brake rod pressing his face to the ground. It took fifteen minutes to lift the car and release his body, and fifteen minutes more to start him to the hospital in an ambulance. It was after this that he died, the time not being more definitely stated. As to whether he was conscious and capable of suffering pain the evidence was conflicting. Some of the witnesses

---

[2] Both parties cite case law from other circuits to support their respective positions. Such case law may be considered as persuasive authority, but is not binding on this court.

>testified that he was 'groaning every once in a while,' and that when they were endeavoring to pull him from under the car 'he would raise his arm' and 'try to pull himself,' while others testified that they did not notice these indications of consciousness, and that he seemed to be unconscious from the beginning.

St. Louis, I.M. & S. Ry. Co. v. Craft, 237 U.S. 648, 654–55 (1915).

Although the Supreme Court characterized the factual scenario as being close to the borderline, the Court ultimately held that the evidence was sufficient for the jury to find the decedent suffered conscious pain and suffering before succumbing to death thirty minutes later.  However, that holding came with the following caveat:

>But to avoid any misapprehension it is well to observe that the case is close to the border line, for such pain and suffering as are substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages under statutes like that which is controlling here.

Id. at 655.

In the present case, Plaintiff has failed to make a prima facie showing that Mr. Lessert endured conscious pain and suffering.  Even with the facts construed in a light most favorable to the non-moving party, at most, Plaintiff is able to suggest that Mr. Lessert was not immediately deceased; however, the record is devoid of any facts that Mr. Lessert consciously suffered.  Plaintiff points primarily to three pieces of evidence: (1) that Mr. Roberts, the train conductor, saw steam and heard gurgling, which he believed was Mr. Lessert taking his final breaths a minute or longer after impact; (2) testimony from Ms. Behrens, the coroner, that gurgling sounds may be heard "[v]ery few, very

minimally, and only immediately at death, but not — or immediately after death, but not a long time after death"; and (3) testimony from Dr. Habbe, who performed an autopsy on Mr. Lessert's body, that he did not have an opinion as to whether Mr. Lessert lived for a short period of time after the injury was inflicted. (Docs. 142-3 at p. 3; 142-2 at p. 5; 142-5 at p. 4). Plaintiff relies on this evidence to indicate, "that Mr. Lessert was alive during the time between the collision and when Mr. Roberts reached him." But it is not enough to demonstrate that Mr. Lessert may have been *alive*, Plaintiff must be able to make a showing that he endured *conscious* pain and suffering. (Doc. 140 at p. 5). Contrary, the evidence fails to demonstrate that even if Mr. Lessert lived for a brief time after impact, he was conscious for any appreciable duration.

      A. <u>Testimony from the Train Conductor, Mr. Roberts</u>

Plaintiff first cites to the testimony of Mr. Roberts to support the argument that an issue of material fact exists to negate summary judgment. Mr. Roberts testified as follows regarding a question posed if he noted any indication that Mr. Lessert may have been alive after being hit by the train:

> Yeah. I mean, when I first got there, I thought I had – I thought he was breathing just for the very first few seconds. And you know, there's a lot of, I guess, like steam coming off of him. It was cold out. So I don't know if that was just from the wounds or, you know, exhaling. But like I said, when I first got there, first few second, you know, I thought maybe he was alive. And then as I sat there with him, just kind of watching, calling out, getting no responses, then watching his stomach wasn't moving or anything. And it was, like, I don't know if he took his last breaths or what, but he wasn't alive at that point.

(Doc. 136 at p. 106-07). Mr. Roberts further testified that when he first approach Mr. Lessert he heard a "gurgle sound" and that he didn't know

if the sound was gasses coming out of Mr. Lessert's body, or if the noise was Mr. Lessert exhaling.  Id.

Even in a light most favorable to Plaintiff, at best, this evidence demonstrates that Mr. Lessert was not deceased for a period of a minute or more after impact with the train.  (Doc. 142-3 at p. 3).  In fact, the entirety of Plaintiff's opposition on this point is titled: "The Litigation Record Contains Substantial Evidence of Mr. Lessert's Survival."  (Doc. 140 at p. 4).  However, as noted *supra*, the standard to make a prima facie showing is not whether Mr. Lessert *survived* for a period of time, but rather, whether he endured *conscious* pain and suffering for an *appreciable* amount of time.  Even if Mr. Lessert had survived for up to a minute or longer following impact with the train, the record is devoid of any facts, even in a light most favorable to Plaintiff, that Mr. Lessert was still conscious for any appreciable length of time.

Rather, the opposite is indicated from the evidence, even in a light most favorable to Plaintiff.  Mr. Roberts testified that he called out to Mr. Lessert and received no response back and observed no movement on his stomach.  Additionally, he testified it was cold outside, and there was steam coming off of Mr. Lessert's body which he believed could have been the result of exhaling or from the severe wounds Mr. Lessert suffered.  Mr. Roberts further testified he found Mr. Lessert's body "contorted and balled up" and witnessed a mixture of human pieces consisting of "blood, chunks" and pieces of leaf blower in between the switch and where Mr. Lessert's body came to rest.  Id.

The Supreme Court held St. Louis, I.M. & S. Ry. Co. was a "borderline" case wherein there involved testimony from at least one witness that the decedent was moving his arm to try to pull himself from under the car and was groaning over a period of time before he was pronounced dead thirty minutes later. The facts in this case do not come anywhere near the threshold in St. Louis, I.M. & S. Ry. Co. to demonstrate conscious pain and suffering. At best, Mr. Roberts's testimony demonstrates Mr. Lessert was not deceased for a minute or longer after impact with the train, but was unresponsive. In reality, the facts in the present case are most akin to the Supreme Court's caveat that pain and suffering that is "substantially contemporaneous with death" or witnessed in "the short periods of insensibility which sometimes intervene between fatal injuries and death" provides no basis for separate damages under FELA. St. Louis, I.M. & S. Ry. Co., 237 U.S. at 655.

B. Testimony from the Coroner, Ms. Behrens

Second, Plaintiff cites to the testimony of Ms. Behrens to support the argument that an issue of material fact exists to negate summary judgment. Ms. Behrens testified that it was possible that a gurgling sound could have come from Mr. Lessert from the time of impact until the time Mr. Roberts reached him. When asked if there were any facts to indicate that Mr. Roberts did not hear a gurgling noise, Ms. Behrens responded: "No, it's very possible that he could have heard gurgling. You can get noises from a body that is not alive. Very few, very minimally, and only immediately at death, but not — or immediately after death, but not a long time after death." (Doc. 142-4 at p. 5).

Plaintiff relies on this portion of testimony to support "the conclusion that Mr. Lessert was alive during the time between the collision and when Mr. Roberts reached him." (Doc. 140 at p. 5).

However, the very excerpts of Ms. Behrens's testimony supplied to this court by Plaintiff contradict Plaintiff's own assertion that Mr. Lessert did not die on impact. When asked if Mr. Roberts's observations were relevant to a coroner's evaluation, she testified:

> Sure, it's relevant, but it doesn't change the fact that when that train struck that man, he died instantly. There was no life left in him by the time his body traveled that — I don't know how many feet it was down the track tumbled under, chopped up, bruised, disfigured, broken. He didn't live through it.

(Doc. 142-4 at p. 5). Even ignoring this opinion, and taking the testimony in a light most favorable to Plaintiff, one could say Ms. Behrens's other statement supports the position that the gurgling noises could only have been heard at death or immediately thereafter. Again, that point demonstrates merely that Mr. Lessert may not have died on impact, but was still alive when Mr. Roberts reached him. However, Ms. Behrens's testimony, even in a light most favorable to Plaintiff, provides no evidence of any degree that Mr. Lessert was conscious for any appreciable period of time after being hit by the train.

### C. Testimony from the Forensic Pathologist, Dr. Donald Habbe

Finally, Plaintiff cites to the testimony of Dr. Habbe to support the argument that an issue of material fact exists to negate summary judgment. Dr. Habbe testified that he did not have an opinion as to whether Mr. Lessert lived for a short period of time after the injury was inflicted. (Doc. 142-5 at p.

4).  It is this statement that Plaintiff relies on.  Dr. Habbe explained it was difficult to give an opinion on the duration of death, as the question rested on the unknown definition of the phrases a "short period of time," "very quickly," or "instantly."

> I don't have a good answer for that.  I think these are horrible injuries.  I think, you know, the skull fracture is horrible.  I think the spinal fracture is a significant injury.  I think he died very quickly after is these injuries were inflicted.  But, you know, the follow-up question, what is very quickly?  Well, I don't have a very good answer to that. Very, very short period of time.  And the reason I'm defensive when you ask me these questions is because people say, was he alive for a hundredth of a second and perhaps consciously aware?  I don't know.

Id.  When pushed on the issue of whether Mr. Lessert died instantly, Dr. Habbe opined, "Depending on what your definition of instantly is.  Yes, he died in a very, very short period of time."  Id.  As with the testimony from Mr. Roberts and Ms. Behrens, Dr. Habbe's testimony, in a light most favorable to Plaintiff, at best, shows Mr. Lessert may not have died on impact.  Such testimony, however, provides no evidence that Mr. Lessert was conscious for any appreciable period of time.  Dr. Habbe's testimony that he does not know if Mr. Lessert may have been alive for a hundredth of a second, and perhaps consciously aware, likewise is not evidence that Mr. Lessert was in fact conscious; it is simply evidence that Dr. Habbe was not willing to opine one way or another.  Again, the evidence from Dr. Habbe's testimony does not come near the threshold set by the Supreme Court to demonstrate conscious pain and suffering.

The evidence provided by Defendant meets its burden, as the moving party, to establish both the absence of any genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a). Plaintiff, then must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. See Anderson, 477 U.S. at 256; FED. R. CIV. P. 56(e). Plaintiff submits the above-mentioned excerpts of deposition testimony from Mr. Roberts, Ms. Behrens, and Dr. Habbe. However, that evidence merely puts into question whether or not Mr. Lessert died on impact or survived for a short time thereafter. Because the issue is not whether Mr. Lessert *survived* for a brief time, but rather, whether he endured *conscious* pain and suffering, the evidence does not meet the standard to demonstrate a genuine issue of material fact.

Plaintiff appears to be making the argument that if Mr. Lessert survived, perhaps he was conscious for a short period of time. However, Plaintiff provides no evidence that it could meet a prima facie showing that Mr. Lessert remained conscious, other than insinuation that he may have lived for a short period of time, and Dr. Habbe's testimony that he did not wish to opine one way or another whether Mr. Lessert remained conscious. The Eighth Circuit has held that "[i]n order to create an issue for trial the nonmoving party must produce sufficient evidence to support a verdict in his favor based on more than speculation, conjecture, or fantasy." Doe v. Dep't of Veterans Affairs of U.S., 519 F.3d 456, 460 (8th Cir. 2008) (internal quotation omitted).

As a matter of law, it is not enough to demonstrate that Mr. Lessert may have lived after impact with the train, and therefore, could have hypothetically remained conscious. The Supreme Court is clear that pain and suffering that is "substantially contemporaneous with death or mere incidents to it, as also the short periods of insensibility which sometimes intervene between fatal injuries and death, afford no basis for a separate estimation or award of damages under [FELA]." St. Louis, I.M. & S. Ry. Co., 237 U.S. at 655. Accordingly, this court recommends Defendant's Motion for Partial Summary Judgment be granted on the issue of damages resulting from conscious pain and suffering.

## II. Damages Arising from Alleged Losses Suffered by Mr. Lessert's Unadopted Step-Daughter

FELA provides damages "in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee." 45 U.S.C. § 51. There is dispute that Mr. Lessert's step-daughter was not legally adopted by him, nor was she Mr. Lessert's biological child. (Doc. 141 at p. 9). Rather, the parties dispute, as a matter of law, whether an unadopted step-child constitutes a "child" for purposes of recovery of damages under FELA. Neither the Supreme Court, nor the Eighth Circuit have expressly held that the definition of "children" is to be controlled by state law.

However, the Supreme Court has held the phrase "next of kin," which is also used in the statute, "is determined by the legislation of the various states to whose authority that subject is normally committed. . . ." Seaboard Air Line

Ry. v. Kenney, 240 U.S. 489, 493–94 (1916).  The Supreme Court rationalized, "it would seem to be clear that the absence of a definition in the act of Congress plainly indicates the purpose of Congress to leave the determination of that question to the state law."  Id.  The Fifth Circuit Court of Appeals, for example, has applied this same rationale in defining "children" under FELA according to state law.  See e.g., Murphy v. Houma Well Serv., 409 F.2d 804 (5th Cir. 1969).

Additionally, both parties are in agreement that the law of South Dakota is controlling when defining beneficiaries pursuant to FELA.  See (Doc. 134 at p. 7) (noting "[f]ederal appellate courts have similarly held that other terms, including "children" should also be defined by state law); (Doc. 140 at p. 6) ("As Defendant notes, this is a question decided by reference to the law of the forum state.").  Defendant argues that the strict definition of "child" under South Dakota's succession statute controls.  (Doc. 134 at p. 7).  Plaintiff urges this court to consider South Dakota case law giving step-parents substantive benefits apart from those considered under the succession statutes.  Plaintiff further responds that the definition of "child" and "stepchild" under South Dakota Codified Law are both mutually exclusive, and those statutes merely define the terms, without delineating their rights as beneficiaries under the law of succession in the state.  Id.  Defendant replies that case law regarding unrelated substantive rights of step-children or step-parents is not controlling, but rather, "[i]nsofar as FELA authorizes a deceased worker's 'children' to recover, the limited *definitional* question of *who* qualifies as a worker's 'child' is

answered by state law. . . .  Here, therefore, the only question is whether South Dakota *defines* a deceased individual's 'children' as including stepchildren." (Doc. 147 at p. 8) (emphasis in original).  This court agrees.  The laws of South Dakota are controlling only insofar as they provide the court a definition of "children" as provided for as a beneficiary under FELA.

> South Dakota Codified Law defines "child" as follows:
>
> "Child" includes an individual entitled to take as a child under this code by intestate succession from the parent whose relationship is involved and *excludes a person who is only a stepchild*, a foster child, a grandchild, or any more remote descendant. Any child of a deceased parent who is born after the decedent's death is considered a child in being at the decedent's death, if the child was conceived prior to the decedent's death, was born within ten months of the decedent's death, and survived one hundred twenty hours or more after birth.

S.D.C.L § 29A-1-201(6) (emphasis added).  Plaintiff argues the "only question is whether South Dakota *defines* a deceased individual's 'children' as including stepchildren.  South Dakota explicitly excludes stepchildren from its definition of a decedent's 'child.' . . .  The inquiry ends there." (Doc. 147 at p. 8) (emphasis in original).  Again, this court agrees.  South Dakota Codified Law regarding beneficiaries in succession expressly excludes a step-child from the definition of a "child."  It makes no difference that the definition of "stepchild" also expressly excludes a "child."  Rather, it further supports the notion that South Dakota has chosen to exclude step-children from the definition of children, by defining them as mutually exclusive.

The case law the Plaintiff cites in support of substantive rights between step-children and step-parents is not applicable, because those cases do not

define beneficiaries within the laws of succession, but instead, focus on other unrelated substantive rights that the South Dakota Supreme Court has chosen to recognize.[3] Such unrelated rights are not controlling as it pertains to the state's definition of "child" for purposes of determining beneficiaries under FELA. Likewise, case law cited by Defendant regarding other unrelated federal statutes or wrongful death suits under *state law* are equally inapplicable.[4]

There exists no issue of material fact that Mr. Lessert's step-daughter was not legally adopted, nor was she the biological child of Mr. Lessert. Therefore, as a matter of law, she is excluded from the definition of "children" as defined under South Dakota Codified Law. Such law is controlling on this

---

[3] Plaintiff cites to Quinn v. Mouw-Quinn, 552 N.W.2d 843 (S.D. 1996), which provided visitation to a step-father after divorce from the child's biological mother, and is therefore, not applicable on the issue of succession rights to beneficiaries under state law.

[4] Defendant argues that Plaintiff's case law focuses on "entirely unrelated legal contexts, [where] South Dakota confers *other unrelated substantive state-law rights* equally to both stepchildren and biological children." (Doc. 147 at p. 8) (emphasis in original). However, Defendant likewise cites to South Dakota case law that is irrelevant. Defendant cites to In re Estate of Howe, 2004 S.D. 118, ¶ 3, 689 N.W.2d 22, 25, which considered a wrongful death claim under *state law*. Additionally, Defendant cites to Necklace v. United States, No. CIV. 06-4274, 2009 WL 2191881, at *1 (D.S.D. July 20, 2009), which considered claims under the Federal Torts Claim Act, not FELA. Despite citing to South Dakota case law in support of a definition of "children" to exclude "step-children", Defendant further argues "[t]he substance of a claim for damages resulting from the death of a railroad employee is governed exclusively by FELA to the exclusion of state law." (Doc. 147 at p. 3). In support of this argument, Defendant cites to Wabash R. Co. v. Hayes, 234 U.S. 86, 34 (1914). However, Wabash R. Co. did not stand for this principle. Rather, Wabash R. Co. stood for the principle that a declaration stating a good cause of action under FELA may afford a basis for a recovery under the state law after eliminating allegations that the injury occurred in interstate commerce. Wabash R. Co. v. Hayes, 234 U.S. 86, 34 S. Ct. 729, 58 L. Ed. 1226 (1914).

court for purposes of defining beneficiaries entitled to damages under FELA. Accordingly, this court recommends Defendant's Motion for Partial Summary Judgment be granted on the issue of damages attributed to Mr. Lessert's unadopted step-daughter.

## CONCLUSION

Based on the foregoing, this Court respectfully recommends that Defendant's Motion for Partial Summary Judgment on Damages (Doc. 104) be granted.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 21st day of May, 2020.

BY THE COURT:

DANETA WOLLMANN
United States Magistrate Judge